[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of New Haven. Many of the facts that give rise to this action are not in dispute.The plaintiff and the defendant whose maiden name is Dianne Buccelli were married on July 11, 1987 in Madison, Connecticut. The plaintiff has resided continuously in the state of Connecticut for at least 12 months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of this marriage, Austin John Dadio, born March 20, 1989 and Casey Elliot Dadio, born May 9, 1991. No other minor children have been born to the defendant wife since the date of marriage of the parties. Neither party has received state assistance. CT Page 9047
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented the court finds that the plaintiff is primarily at fault for the breakdown of the marriage.
The plaintiff was born on August 10, 1961. He has a Bachelor's Degree and a Master's Degree. He obtained his Master's Degree during the time he was married to the defendant. When the parties were married the plaintiff was employed at the Yale Psychiatric Institute. The plaintiff started to work at the Yale Psychiatric Institute in 1983 and worked there continuously until he left in April 1997. He had been employed there for approximately 14 years. While at Yale he did rehabilitation counseling. He thought that he was burnt out at his employment at Yale Psychiatric Institute and left to begin a new career opportunity. After having worked at Yale Psychiatric Institute for approximately 14 years he found it very difficult to work with patients in locked wards. The defendant agreed to his leaving Yale Psychiatric Institute. The defendant's only objection to the plaintiff leaving his position at Yale Psychiatric Institute was because of the loss of benefits. The plaintiff does not have any health problems.
When the plaintiff was employed at Yale Psychiatric Institute his work was mostly vocational counseling. At the present time his work is primarily industrial and transitional counseling. The last full year that the plaintiff worked at Yale Psychiatric Institute was 1996.
Hand Therapy Associates is a clinic for people with hand injuries and disabilities. The plaintiff is employed for 20 hours per week at Hand Therapy Associates. His hourly rate is $30.75. He does rehabilitation counseling there. Hand Therapy Associates also contributes $150.00 monthly towards individual health insurance premiums. The principle type of rehabilitation done at Hand Therapy Associates is for the upper part of the body. Harvest Park then continues the therapy that was done by Hand Therapy Associates. The plaintiff is a counselor at Hand Therapy and also is in charge of industrial rehabilitation at Hand Therapy Associates. He is also the director of the Harvest Park Program and the entire program. The 20 hours weekly that the plaintiff works at Hand Therapy Associates is all of the hours that he is needed to work there. Hand Therapy Associates would object to the plaintiff doing similar work to that done at Hand Therapy Associates as would Harvest Park. The same person who owns Hand Therapy Associates also owns Harvest Park. Hand Therapy CT Page 9048 Associates and Harvest Park are aware of the plaintiffs Transrehab business and does not consider that to be a conflict. That business presently involves aggressive situations in schools. The $30.75 hourly rate received by the plaintiff is $5.00 to $6.00 hourly more than he would earn if he worked elsewhere doing similar work. The plaintiff does not have a signed employment contract with either Hand Therapy or Harvest Park.
The plaintiff is also paid $30.75 hourly from Harvest Park.
Transrehab, Inc. is a Connecticut corporation that was incorporated on September 27, 1996. The two offices and directors are the plaintiff and Gail Garfield. Under its Certificate of Incorporation the nature of the business is to establish, maintain, conduct and operate a business of providing consulting services in the area of industrial rehabilitation. The plaintiff invested $500.00 in 1996 in Transrehab. The same amount was invested by his partner. He anticipates that Transrehab's income will grow. Transrehab presently owns a printer and some other equipment. Transrehab pays for the plaintiff's pager and mobile phone and for some of his meals and lodgings. The plaintiff has invested between $4,000.00 and $6,000.00 in Transrehab. Transrehab owes him that money although it is not shown on his financial affidavit.
In the calendar year 1993 the plaintiff had gross income from his consultant business of $11,963.00 and a profit of $7,916.00. He also had income from Yale Psychiatric Institute of $35,521.00. The plaintiff worked full-time at Yale Psychiatric Institute consisting of 37 1/2 hours weekly. In 1994 the plaintiff had gross income from his consultant business of $10,012.00 and a profit of $6,411.00. He also had gross income from Yale Psychiatric Institute of $35,065.00. He also had income from Hand Therapy Associates, P.C. of $1,500.00. He worked part-time at Hand Therapy Associates during the calendar year 1994. In 1995, the plaintiff had gross income from his consultant business of $3,068.00 and a profit of $1,068.00. He had gross income from Hand Therapy Associates of $29,528.00 and additional gross income of Hand Therapy Associates of $30,031.00. He also had gross income from Yale Psychiatric Institute of $20,332.00. In the calendar year 1996 the plaintiff had gross income from his consultant business of $500.00 and a loss of $182.00. He also had a loss from Transrehab, Inc. of $439.00. He had income from Yale Psychiatric Institute of $20,198.00, income from Hand Therapy CT Page 9049 Associates of $30,387.00, and income from Harvest Park Work Hardening Center of $11,651.00. During the calendar year 1996, the plaintiff was working part-time at Yale Psychiatric Institute and at Hand Therapy Associates for an average of 20 hours weekly and at Harvest Park of 10 hours weekly. In the calendar year 1997, the plaintiff had income from Hand Therapy Associates, P.C. of $31,741.00. He had a loss from Transrehab of $2,784.00. He had income from Yale Psychiatric Institute of $6,787.00. That was the last year that the plaintiff worked part-time at Yale Psychiatric Institute having left Yale Psychiatric Institute in April 1997. He also had income from Harvest Park Work Hardening Center of $17,858.00. In the calendar year 1998, Transrehab, Inc. had gross profits of $5,604.00 and net a loss of $6,804.00. In the calendar year 1998 he had gross wages from Hand Therapy Associates, P.C. $29,727.50. He also had gross wages in the calendar year 1998 from Harvest Park of $15,951.00.
In the calendar year 1993, the defendant had gross income from Yale University of $43,492.00. During the calendar year 1994, the defendant had gross income from Yale University of $44,138.00. The defendant left her employment at Yale where she was employed at the Cedarhurst School in November 1994 as a result of reorganization and her position being eliminated. She then went to work for the Branford School System as a Special Education Teacher. Her 1994 annual starting salary with the Branford School System was approximately $34,000.00. The plaintiff agreed to her job transfer as it gave the defendant job security. She had income from the Branford Board of Education of $3,057.00 in 1994. During the calendar year 1996, the defendant had gross income from the Branford Board of Education of $33,356.00. During the calendar year 1997, the defendant had gross income from the Branford Board of Education of $33,335.00.
Both parties recognize that it is permissible to utilize a parties' earning potential in making financial awards where the earnings of that party are voluntarily depleted. In this case, the court finds that the plaintiff did not voluntary deplete his earnings so as to deprive the defendant of financial support. Similarly, the court finds that the defendant did not deplete her earnings so as to deprive the plaintiff of financial support. Further, each party agreed to the other party changing their respective jobs. Accordingly, the court is not using earning capacity in either party for entering financial orders.
The plaintiff's gross weekly income from Hand Therapy CT Page 9050 Associates is $621.00. His gross weekly income from Harvest Park is $307.00. He has a liability to MBNA platinum with a balance due of $14,115.00 and a loan from his sister with a balance due of $2,000.00. The plaintiff's liability to MBNA Platinum was incurred by the plaintiff to pay Attorney's fees. The parties own a condominium in joint names that was purchased in July of 1991. Its present fair market value is $120,000.00. It has a mortgage with a balance of $113,000.00 and an equity of $7,000.00. The plaintiff also has bank accounts totaling $1,569.00. He has a 401K plan with a value of $7,100.00. His Yale Defined Benefit Retirement Plan will pay hi $249.00 per month at age 65. He owns a 50% interest in Transrehab, Inc.
The defendant was born on March 9, 1960. The defendant obtained her Master's Degree during the time she was married to the plaintiff. The defendant does not have any health problems. The defendant has an Undergraduate Degree in Special Education and a Master's Degree in counseling. It would take her two years based on attending one class a semester to obtain a leadership program degree. Her financial affidavits shows a $30.00 weekly expense for education. That represents the cost to her in order to take the next four classes that she needs to obtain the leadership program. With the leadership program, she can apply for an administrative position in the teaching field. There are no known job openings in the administrative field in the Branford educational system.
The defendant is presently employed as a Special Education Teacher by the Branford Board of Education. Her gross weekly income from that employment is $743.93. She also is employed doing school tutoring with an average gross weekly income of $29.51 and temporary summer tutoring of $26.25. She owes a debt to her parents with a balance due of $9,500.00 and a mastercard liability with a balance $200.00. The $9,500.00 owed by the defendant to her parents is for legal fees. She has paid $14,000.00 in legal fees as of March 3, 1999. She has two bank accounts $978.99. She has a retirement pension plan from her employment at Yale that will provide for a $103.23 weekly payment. She also has a teacher's retirement plan with a value of $9,106.55 as of June 1998. The defendant's financial affidavit shows a cost for daycare of $75.00 per week. The plaintiff agrees that he should pay one-half of the daycare cost following dissolution when the children are with him based on the current daycare costs. The defendant has applied for a $1,000.00 annual salary increase that has been approved and is not reflected on CT Page 9051 her financial affidavit dated March 3, 1999.
The court finds that for child support guidelines purposes the plaintiff's et weekly income is $665.00 and the defendant's net weekly income is $588.00. The combined net weekly income of the parties is $1,253.00. The total support obligation is $373.00 with the plaintiff share being 53% or $213.00 and the defendant share being 47% or $189.00. The plaintiff seeks to have the court deviate from the guidelines based on the shared custody agreement. The court finds that the guideline amount is appropriate and equitable and, therefore, the court does not deviate from the guidelines.
There is a balance due to counsel for the minor children of $3,900.00.
This court has considered a provision of Section 46b-56 (b) and 46b-56a and 46b-56b regarding the issue of custody and joint custody and visitation, and has considered a provision of Section46b-62 regarding the issue of attorney's fees, and has considered a provision of Section 46b-82 regarding the issue of alimony, and has considered the provision of Section 46b-81 regarding the issue of property division and has considered the provision of Section 46b-84 as well as the child support guidelines regarding the issue of support.
The court enters the following orders:
A. By Way of Dissolution of Marriage.
1. The marriage between the parties is dissolved and each party is declared to be and unmarried.
B. By Way of Custody and Visitation and Support
1. The parties entered into a written agreement dated March 3, 1999, which was further supplemented with a statement read into the record on March 3, 1999, a copy of which is in the court file. The written agreement as well as the supplement to that agreement that was read into the record are approved of and orders are entered in accordance with both the written agreement and transcript of the record of the supplemental agreement.
2. The plaintiff is ordered to pay to the defendant support in the amount of $213.00 weekly by immediate wage execution. CT Page 9052
3. The defendant is to provide health insurance for the benefit of the minor children as is available through her place of employment. The parties are to divide equally any uncovered or unreimbursed health expenses for the children.
4. The parties are to equally share the cost of daycare.
5. The plaintiff shall have the right to claim the youngest child as an exemption for Federal and State Income Tax purposes for each calendar year for which he is current in his support payments at the end of such calendar year.
C. By Way of Property Orders.
1. The plaintiff is ordered to quit-claim to the defendant all of his right, title and interest to the condominium located at 34 Jerimoth Drive, Branford, Connecticut by August 16th, 1999. The defendant is to hold the plaintiff harmless on the mortgage note and deed and all condominium fees and all other expenses relating to the condominium.
2. The parties are to comply with the agreement that they reached with family relations regarding various items of property to be made available by the defendant to the plaintiff.
3. The defendant is to pay the liabilities shown on her financial affidavit and hold the plaintiff harmless therefrom.
4. The plaintiff is to pay the liabilities shown on his financial affidavit and hold the defendant harmless therefrom.
5. The bank accounts shown on the plaintiff's financial affidavit are awarded to the plaintiff.
6. The bank accounts shown on the defendant's financial affidavit are awarded to the defendant.
7. The deferred compensation plans shown on the plaintiff's financial affidavit are awarded to the plaintiff.
8. The deferred compensation plans shown on the defendant's financial affidavit are awarded to the defendant.
9. All of the plaintiff's interest in Transrehab, Inc. are CT Page 9053 awarded to the plaintiff.
D. By Way of Alimony
The plaintiff is to pay to the defendant alimony in the amount of $20.00 per week. Alimony is terminate upon the earliest of the following events:
a. The defendant's remarriage.
b. The death of the plaintiff or the defendant.
 c. July 1, 2007. The oldest child will have reached 18 years of age on March 20, 2007 and should have graduated from High School by July 1, 2007 and the defendant should thereafter have less need for alimony. The alimony term cannot be extended.
 d. The provisions of Section 46b-86(a) and 46b-86(b) are applicable.
E. By Way of Attorney's Fees
1. Neither party is ordered to pay attorney's fees to the other party.
2. Each party is to pay one-half of the balance of the attorney's fee due to counsel for the minor children. Said payments are to be at the rate of $20.00 per week for each party.
F. Miscellaneous Orders
1. The parties are ordered to exchange copies of W-2 and 1099's and other tax forms showing any form of income received, as well as copies of their Federal and State Income Tax Returns on or before May 15th of each calendar year.
2. Counsel for the plaintiff is to prepare the judgment file within 30 days and send it to the counsel for the defendant for signature and filing.
Axelrod, J. CT Page 9054